SCOTT N. SCHOOLS (SC 9990)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
MELANIE L. PROCTOR (CSBN 228971)
Melanie.Proctor@usdoj.gov
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6730
FAX: (415) 436-6927

Attorneys for Respondents

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA ZOILA CRUZ-CELAYA, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> ALBERTO GONZALES, Attorney General ) <br> of the United States; and MICHAEL ) <br> CHERTOFF, Secretary of the Department of) <br> Homeland Security, ) <br> ) <br> Respondents. ) <br> _____) | No. C 07-3470 MJJ <br><br><br><br> GOVERNMENT'S RETURN |

## I. INTRODUCTION

Ten years ago, Petitioner Maria Zoila Cruz-Celaya ("Petitioner") was ordered deported from the United States, and was granted the privilege of departing voluntarily. Instead, Petitioner disappeared. It was not until the Department of Homeland Security ("DHS")[1] found her in October 2006 that she sought review of the order of deportation. If not for those efforts, DHS would be able to deport her to her native country.

---

[1] On March 1, 2003, the former Immigration and Naturalization Service was abolished, and the Department of Homeland Security and its Bureau of Immigration and Customs Enforcement ("ICE") assumed responsibility for enforcement of immigration laws. 6 U.S.C. § 202(3).

GOVERNMENT'S RETURN
C 07-3470 MJJ

Petitioner now seeks release from DHS custody. She argues that her continued detention violates her rights under the Fifth Amendment of the United States Constitution. Contrary to Petitioner's assertions, she is not entitled to release from DHS custody. Because Petitioner is a flight risk, and because the sole delay in her deportation is her meritless appeal, her Petition for a Writ of Habeas Corpus should be denied.

## II. FACTS

Petitioner, a native and citizen of El Salvador, was placed in deportation proceedings in 1994, when the legacy Immigration and Naturalization Service ("legacy INS") issued an Order to Show Cause. See Exh. A. The legacy INS alleged that Petitioner was deportable pursuant to former 8 U.S.C. § 1251(a)(1)(B),[2] as an alien who had entered the United States without inspection. Id. On May 22, 1997, an immigration judge denied Petitioner's application for asylum and withholding of deportation, and granted her the privilege of voluntary departure by July 10, 1997.[3] See Exh. B. On July 16, 1998, the Board of Immigration Appeals ("BIA") affirmed the immigration judge. See Exh. C. The BIA granted Petitioner thirty days from the date of its order to depart the United States. Id.

However, Petitioner did not depart. On October 17, 2006, DHS officers apprehended Petitioner at an address in Bakersfield, California.[4] See Exh. D. Only then did Petitioner seek judicial review of the deportation order. See Exh. E. On October 26, 2006, Petitioner filed a Petition for Review with the United States Court of Appeals for the Ninth Circuit, and sought a stay of removal. Id. At the same time, Petitioner moved the BIA to reopen and reconsider its prior

---

[2]This section was redesignated as 8 U.S.C. § 1227 by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009, § 305(a)(2).

[3]Under 8 U.S.C. § 1229c(c) (1997), an alien meeting certain conditions may be granted the privilege of departing voluntarily, which confers substantial benefits compared to involuntary deportation. See, e.g., Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 553-54 (9th Cir. 1990) (explaining that voluntary departure allows alien to select country of destination, and facilitates possibility of return to the United States). Failure to depart renders the alien subject to civil penalties and ineligible for any form of relief from removal for ten years. 8 U.S.C. § 1229c(d).

[4]This fact belies Petitioner's contention that she resides within the Northern District of California. See Petition, p. 2.

GOVERNMENT'S RETURN
C 07-3470 MJJ                                           2

decision. See Exh. F.

On December 15, 2006, DHS notified Petitioner that her custody status would be reviewed. See Exh. G. January 31, 2007, DHS determined that Petitioner would not be released from custody because her removal had been delayed solely because she filed a petition for review with the Ninth Circuit, receiving a temporary stay of removal. See Exh. H. In addition, DHS informed Petitioner that the agency was actively pursuing her travel documents, and had confirmation from the Consulate of El Salvador that documents would soon be issued. Id. Finally, DHS stated that it considered Petitioner to be a flight risk. Id.

On March 12, 2007, the BIA denied her motion. See Exh. F. On April 4, 2007, the Ninth Circuit dismissed her petition for review without prejudice to filing a new petition for review of the BIA's March 2007 order. See Exh. E. The appellate court left the stay of removal in place. Id. On April 10, 2007, Petitioner filed a timely petition for review of the BIA's order denying her motion to reopen and reconsider the 1998 BIA decision. See Exh. I.

### III.   LEGAL BACKGROUND

Several statutes within the Immigration and Nationality Act, 8 U.S.C. § 1101, et seq., provide for the detention of aliens subject to removal[5] proceedings. The authority of the DHS to detain an alien subject to removal charges is found in 8 U.S.C. § 1226 and 8 U.S.C. § 1231. Section 1226 pertains to detention when the alien is in a "pre-removal" order status, i.e., before a removal order becomes final. See Demore v. Kim, 538 U.S. 510 (2003). Section 1231 pertains to detention when the alien is in a "post-order" removal status, i.e., after a removal order has become final. See Zadvydas v. Davis, 533 U.S. 678 (2001). A decision by DHS as to whether an alien is entitled to bond may be appealed to an immigration judge, see 8 C.F.R. §§ 1003.19; 1236.1(d)(1); 236.1(d)(1), and then to the BIA. See 8 C.F.R. §§ 1003.19(f); 1236.1(d)(3); 236.1(d)(3).

Under the post-order removal detention provisions of § 1231, after an alien has been ordered

---

[5]Although the terms have changed in the intervening years, "any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation." Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 309(d)(2), 110 Stat. 3009.

GOVERNMENT'S RETURN
C 07-3470 MJJ                                   3

1  removed, DHS is directed to endeavor to remove an alien within ninety days after the start of a
2  removal period. 8 U.S.C. § 1231(a). During this ninety days, the alien must be held in custody.
3  8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General <u>shall</u> detain the alien."
4  (emphasis added)). The regulations provide that once the ninety-day period ends, the district
5  director may continue to hold in custody an alien who the district director determines is unlikely to
6  comply with the removal order. 8 C.F.R. § 241.4(a)(4).

7  <u>Zadvydas</u> held that aliens detained under § 1231(a)(6) beyond the ninety-day period can seek
8  release after 180 days in custody upon a showing that "there is no significant likelihood of removal
9  in the reasonably foreseeable future." 533 U.S. at 701; <u>see also</u> <u>Clark v. Martinez</u>, 543 U.S. 371,
10 378 (2005). "[F]or the sake of uniform administration in the federal courts," the Court held that a
11 six-month period of post-removal detention constitutes a "presumptively reasonable period of
12 detention." <u>Zadvydas</u>, 533 U.S. at 701; <u>Lema v. INS</u>, 341 F.3d 853, 856 (9th Cir. 2003). However,
13 release is not automatically mandated after the expiration of the six-month period.

> "This six-month presumption, of course, does not mean that every alien not removed must be released after six months. <u>To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.</u>"

17 <u>Zadvydas</u>, 533 U.S. at 701 (emphasis added).

18      Procedurally, after the six-month period has expired, the Court held that ICE can continue
19 to detain an alien beyond six months, unless the "alien provides <u>good reason to conclude there is no</u>
20 <u>significant likelihood of removal in the reasonably foreseeable future.</u>" <u>Zadvydas</u>, 533 U.S. at 701
21 (emphasis added). As the Ninth Circuit has emphasized, "<u>Zadvydas</u> places the burden on the alien
22 to show, after a detention period of six months, that there is 'good reason to believe that there is no
23 significant likelihood of removal in the reasonably foreseeable future.'" <u>Pelich v. INS</u>, 329 F.3d
24 1057, 1059 (9th Cir. 2003) (quoting <u>Zadvydas</u>, 533 U.S. at 701).

25      After the initial ninety-day period, aliens in post-removal order status may be released, in
26 the discretion of DHS, subject to bond and other supervisory conditions. 8 U.S.C. § 1231(a)(3); 8
27 C.F.R. § 241.4; 8 C.F.R. § 241.13; <u>see also</u> <u>Zadvydas</u>, 533 U.S. at 696 (noting that "[t]he choice...is
28 not between imprisonment and the alien 'living at large.' . . . It is between imprisonment and

GOVERNMENT'S RETURN
C 07-3470 MJJ                                    4

**1** supervision under release conditions that may not be violated."); Doan v. INS, 311 F.3d 1160 (9th
**2** Cir. 2002) (holding that post-order removal aliens released pending repatriation efforts can be
**3** subject to bond conditions).

### IV. ANALYSIS

A.  PETITIONER HAS NOT NAMED THE PROPER RESPONDENT AND HAS FILED HER PETITION IN THE WRONG VENUE

**7** Courts have been clear: a petitioner for a writ of habeas corpus must name her actual
**8** custodian, and file her writ in the district in which she is confined. Rumsfeld v. Padilla, 542 U.S.
**9** 426, 442 (2004); Santiago v. INS, 134 F. Supp. 2d 1102, 1104 (N.D. Cal. 2001). This simple rule
**10** "serves the important purpose of preventing forum shopping by habeas petitioners." Padilla, 542
**11** U.S. at 447. Here, Petitioner has named only the United States Attorney General and the Secretary
**12** of the Department of Homeland Security. Accordingly, the Petition should be dismissed for failure
**13** to name the proper respondent. Santiago, 134 F. Supp. 2d at 1104. Furthermore, not only is
**14** Petitioner a resident of Bakersfield, California, but she is also detained in Bakersfield, which lies
**15** in the Eastern District of California. See Exhs. A, D; Petition at p. 3. Thus, at a minimum, her
**16** Petition should be transferred to that district. Tri v. INS, C 98-3981 EDL, 1998 WL 827557, at *1
**17** (N.D. Cal. Nov. 20, 1998) (transferring case from Northern District to Eastern District).

B.  PETITIONER'S DETENTION IS GOVERNED BY 8 U.S.C. § 1231

**19** Petitioner erroneously assumes that she is being held pursuant to 8 U.S.C. § 1226. Petition,
**20** p. 6 ¶ 19. To the contrary, her detention is governed by 8 U.S.C. § 1231. Once an alien's order of
**21** removal becomes administratively final, detention is governed by 8 U.S.C. § 1231. In this case,
**22** Petitioner's order of removal became administratively final when she overstayed her voluntary
**23** departure period. 8 C.F.R. § 1241.1(f). As an alien under an administratively final order of
**24** removal, Petitioner is detained pursuant to 8 U.S.C. § 1231. De La Teja v. United States, 321 F.3d
**25** 1357, 1363 (11th Cir. 2003) ("Because a final removal order has been entered, De La Teja is no
**26** longer being detained pursuant to § 1226(c), which governs only detention prior to a final removal
**27** order."). Under 8 U.S.C. § 1231(a)(2), the Attorney General must detain an alien subject to a final
**28** order of removal during the ninety-day statutory "removal period." 8 U.S.C. § 1231(a)(1)(B). To

find otherwise would reach an absurd result: an alien who untimely or frivolously seeks judicial review could continually convert post-order detention to pre-order detention.

Here, the ninety-day removal period began to run upon Petitioner's overstay of her voluntary departure period. 8 C.F.R. § 1241.1(f). That does not mean that the removal period has expired, however. The ninety-day removal period "shall be extended . . . if the alien acts to prevent [her] removal." 8 U.S.C. § 1231(a)(1)(c). Petitioner's actions in failing to depart, and more recently, in seeking and obtaining a judicial stay in the Ninth Circuit are acts that prevent her removal and therefore, under the plain terms of the statute, extend the removal period. Cruz-Ortiz v. Gonzales, 221 Fed. Appx. 531, 2007 WL 580670, at *1 (9th Cir. Feb. 22, 2007) (describing detention under a stay of removal as voluntary); Akinwale v. Ashcroft, 287 F.3d 1050, 1052 n.4 (11th Cir. 2002) (citing 8 U.S.C. § 1231(a)(1)(c) and stating that petitioner interrupted the temporal running of the removal period by moving for and obtaining a stay of deportation); Lawrence v. Gonzales, 446 F.3d 221, 227 (1st Cir. 2006) (holding that an alien's continued post-order detention past the ninety day removal period was permissible where it "occurred pursuant to his own procuring of stays incident to his legal challenges to the removal order"); Soberanes v. Comfort, 388 F.3d 1305, 1310-11 (10th Cir. 2004) (declining to apply Zadvydas to an alien's two and a half year detention, where the alien was detained pending judicial review of his deportation order).

During this extended removal period, DHS may continue to detain the alien or release the alien in the exercise of discretion. 8 U.S.C. § 1231(a)(1)(C). Because Petitioner has acted to suspend the removal period by obtaining a judicial stay, Respondents have the discretion to continue her detention. Id. The Petition should be denied.

C.    PETITIONER IS NOT ENTITLED TO RELEASE

Petitioner has not met her burden of proving there is no significant likelihood of her removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701 ("once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing"). In this case, Petitioner has not established any non-self-generated barrier to her repatriation. Instead, Petitioner prevented her removal from the United States by failing to depart within her voluntary departure

GOVERNMENT'S RETURN
C 07-3470 MJJ                                                6

period, and by obtaining a Ninth Circuit stay of removal. Therefore, the six month period of post-order removal identified in Zadvydas v. Davis, 533 U.S. 678 (2001) was suspended and her continued discretionary detention is authorized by 8 U.S.C. § 1231(a)(1)(C).

DHS has completed a post-order custody review and determined that Petitioner should remain detained because she is a flight risk. See Exh. G. Thus, DHS exercised its discretion and lawfully denied release. Zadvydas, 533 U.S. at 683 ("regulations add that the INS District Director will initially review the alien's records to decide whether further detention or release under supervision is warranted after the 90-day removal period expires"). Further, Petitioner's detention has a definite termination point;[6] accordingly, Petitioner is not an alien subject to a period of "indefinite detention." Zadvydas, 533 U.S. at 685 ("the issue we address is whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States"). Petitioner failed to meet her burden; therefore, her Petition for a Writ of Habeas Corpus should be denied.

Petitioner also contends that her detention violates her substantive and procedural due process rights. However, this Court need not reach petitioner's due process arguments because the Supreme Court in Zadvydas was able to reach a statutory construction of 8 U.S.C. § 1231(a)(6) which avoids the constitutional question. Zadvydas, 533 U.S. at 689. Even if the Court were to address her constitutional claim, Petitioner has not shown a substantive due process violation simply because her detention has been continued as a result of her own actions to prevent her removal. This case does not involve a situation where removal is impossible because the alien's country of origin will not accept her.

Furthermore, Petitioner fails to articulate any facts to support her claim. Id. Bare allegations are insufficient to raise a question of procedural due process or substantive due process violations.

---

[6] Indeed, it seems likely the Ninth Circuit proceedings will conclude in short order. Petitioner's motion to reopen immigration proceedings was eight years late. 8 C.F.R. § 1003.2(b)(2); see also Lara v. Gonzales, No. 05-75326, slip op (9th Cir. Sept. 6, 2007) (holding BIA did not abuse its discretion in denying untimely motion to reopen) (attached as Exh. J); Martinez-Cornejo v. Gonzales, No. 06-71778, slip op. (9th Cir. Sept. 6, 2007) (same) (attached as Exh. K). In addition, the Office of Immigration Litigation, U.S. Department of Justice, has filed a motion for summary disposition. See Exh. H.

1  Wong v. United States, 373 F.3d 952, 967 (9th Cir. 2004). Petitioner has been afforded post-order
2  custody review. See Exh. G. DHS carefully evaluated her case, and determined that she presents
3  a flight risk. Id. Her status will be reviewed again one year from the date of the last review. Id.
4  Thus, Petitioner has been afforded all the process that is due to her.

5       Regardless, the DHS's decision is based on sound reason. Petitioner was ordered deported
6  in 1998, and she failed to depart. Id. In addition, the record demonstrates that she has a history of
7  disregarding the immigration process. Petitioner's former counsel withdrew from the case after she
8  failed to cooperate. See Exh. L. In July 2001, the former INS mailed Petitioner a certified letter,
9  ordering her to surrender for deportation. See Exh M. Regardless, she failed to do so, leading the
10 former INS to issue a warrant for her arrest. Id. Accordingly, she is a flight risk. Furthermore,
11 because she sought a stay of removal, Petitioner's continued detention is voluntary. Cruz-Ortiz v.
12 Gonzales, 221 Fed. Appx. 531, 2007 WL 580670, at *1 (9th Cir. Feb. 22, 2007); see also Bernal v.
13 Chertoff, No. 06cv2184 JAH, 2007 U.S. Dist. LEXIS 61688, at *6-7 (S.D. Cal. August 22, 2007)
14 (finding that because alien voluntarily chose to remain in detention while pursuing his appeal, he
15 was not entitled to release). Finally, because it is apparent that travel documents are readily
16 available, her detention has a definite termination point. See Exhs. G, H; see also Ma v. Ashcroft,
17 257 F.3d 1095, 1099 (9th Cir. 2001). Her Petition should be denied.

18     D.    ALTERNATIVELY, THE PETITION SHOULD BE DENIED BECAUSE
          PETITIONER IS A FLIGHT RISK
19

20      Assuming arguendo, and the Court determines that Petitioner's untimely appellate efforts
21 have converted her detention to pre-removal status, Petitioner is being lawfully detained pursuant
22 to 8 U.S.C. § 1226(a). This section grants the Secretary of DHS the discretion to hold aliens in
23 custody pending a final order of removal. 8 U.S.C. § 1226(a). The Supreme Court has held that
24 detention during removal proceedings is a constitutionally permissible part of the process. Demore
25 v. Kim, 538 U.S. 510, 531 (2003).

26      Here, the Secretary has exercised his discretionary authority, and determined that Petitioner
27 should be detained because she is a flight risk. See Exh. H This determination is not subject to
28 judicial review, unless Petitioner raises a colorable constitutional question. 8 U.S.C. § 1226(e);

1  Quezada-Bucio v. Ridge, 317 F. Supp. 2d 1221, 1227 (W.D. Wash. 2004). As discussed above,
2  Petitioner has failed to articulate any facts that would suggest her due process rights have been
3  violated.
4      She has been afforded individualized custody review. Exh. H. There is nothing
5  unreasonable about the length of time she has been held in detention. See Azeke v. Gonzales, No.
6  C-07-0709 MMC, 2007 WL 1223844 (N.D. Cal. Apr. 25, 2007) (denying habeas petition by alien
7  held in detention since June 2006 whose removal was stayed by the Ninth Circuit). Here, as in
8  Azeke, DHS has expressly determined that Petitioner represents a flight risk. Id. at *2; Exh. H. Her
9  Petition should be denied. See Begir v. Clark, 220 Fed. Appx. 269 (9th Cir. Jan. 25, 2007) (holding
10 that where alien had been afforded individualized custody review and had been found to present a
11 flight risk, continued detention was permissible); Escalante-Calmo v. Clark, No, C06-1575 RSL,
12 2007 WL 1577868 (W.D. Wash. May 30, 2007) (finding that non-criminal alien held in custody
13 pending Ninth Circuit decision on his appeal could be detained).

### V. CONCLUSION

For the foregoing reasons, the Government respectfully requests the Court to deny the Petition.

Dated: September 12, 2007

Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

       /S/
MELANIE L. PROCTOR
Assistant U.S. Attorney
Attorneys for Respondents